Wanamaker, J.
The main question in this case is not whether the people of a municipality under the Constitution of 1912 have the right of referendum vote to adopt their own form of government and to amend the same from time to time, agreeable to the constitution. All parties concede the «soundness of that general proposition. The question is whether a municipality that has adopted a charter, agreeable to the Constitution of 1912, can amend that charter by any other method than the one appointed in the Constitution of Ohio in Article XVIII, relating to municipal corporations, and particularly whether or not said charter may be amended, as claimed by the relators, pursuant to an act passed by the general assembly of the state of Ohio, as set forth in the petition filed in the court of appeals, which act is referred to in the court of appeals as Exhibit A and adopted as a part of the *308 petition. This act (Section 3515-1 et seq., General Code) was passed April 28, 1913, and is found in 103 Ohio Laws, pages 767 to 786, inclusive, the “Federal Plan” being provided for in Sections 1 to 16, Article V of the act.
In short, the relators have proceeded with their petition for a referendum election wholly under said act of the general assembly, holding evidently that the act applies to the government of the city of Dayton, Ohio, which proposition last stated is denied by plaintiff in error. This issue is the leading and crucial one before this court.
Has the act in question, passed April 28, 1913, any application whatsoever to the government of the city of Dayton, touching its governmental plan, or the amendment thereof? We hold that the statute in question has no application whatsoever to the government of the city of Dayton, for the following reasons :
1. It is conceded by the relators that on August 12, 1913, the inhabitants of the city of Dayton “adopted a charter.”
It has been settled in the Lynch case, from Toledo, State, ex rel. City of Toledo, v. Lynch, Auditor, 88 Ohio St., 71, that in order that a municipality may avail itself of home-rule powers under Article XVIII it is necessary that it adopt a charter, and that until such charter is adopted the municipality is subject to the general laws of the state.. By the adoption of the charter, however, it is under such decision given “immunity” from general laws touching the governments of municipal *309 ities generally, such as the act here in question, passed in 1913,
Judge Shauck, in his opinion, touching this principle, uses this language, at page 93:
“This article [Article XVIII] provides two modes of securing the permitted immunity from the operation of the uniform laws which the legislature is required to pass. One of them is defined in the second section, and manifestly it is not self-executing, for it expressly authorizes the legislature to pass ‘additional laws,’ that is, laws additional to the general laws which the legislature is required to pass, such additional laws to become' operative in a municipality only after their submission to the electors thereof and affirmance by a majority of those voting thereon. The other mode is defined in the provisions of the later sections relating to the adoption of charters
That doctrine announced in this case, as to which there was unanimity among the judges, has been followed by numerous other decisions to the same effect.
2. The act itself in its title contains this language :
“To provide optional plans of government for municipalities and permitting the adoption thereof by popular vote in accordance with article XVIII, section 2, of the constitution of Ohio.”
Now, the city of Dayton never proceeded or attempted to proceed under Section 2 or the statute enacted pursuant thereto. It did proceed, however, according to Sections 7 and 8 of Article XVIII of the Constitution. Section 7, Article XVIII, reads:
*310 “Any municipality may frame and' adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government.”
Section 8 immediately follows with the provisions as to choosing a commission and framing and adopting a charter.
The very fact that the title of the act itself shows that it was enacted pursuant to Section 2, Article XVIII of the Constitution, excludes any application of this act or any of its parts to any other section of Article XVIII, upon the principle that the expression of one section is the exclusion of all others, unless the contrary clearly appears.
Clearly, then, the statute can have no reference or application to the amendment of any city charter adopted pursuant to Section 8, Article XVIII of the Constitution.
3. The optional plans formulated in the above act of the general assembly (Section 3515-1 et seq., General Code) are designated in the act as follows:
(a) Commission Plan.
(b) City Manager Plan.
(c) Federal Plan.
It is conceded that the city of Dayton has neither one of these plans, but has adopted through its charter a modified plan, being possibly a combination of certain portions of the commission plan and the city manager plan, which combination as framed by the charter commission of the city of Dayton, under the constitution, is denominated in the charter itself the “Commission Manager” plan. Hence *311 it is obvious that the form of government adopted by the city of Dayton is not identical with any one of the plans mentioned in the statute; and again we must conclude that the statute has no application.
4. The optional plan of government contains the following provision (Section 3515-69, General Code) touching the abandonment of plan: .
“Abandonment of plan. Any municipality which shall have operated for five years under any plan provided in this act may abandon such organization, and may adopt any organization qr form of government provided by this act and designated in the petition by proceeding as follows.” (Then follow the steps in detail for making such change.)
It should be clearly noted that the relators in the prosecution of this suit have undertaken to proceed under this statute, and this particular part thereof, and their briefs and arguments in court clearly and unmistakably show this fact. They treat the adoption of the charter as if it were a formal adoption under the statute of one of the optional plans, and five years having elapsed, as provided in the statute, they undertake to change the plan theretofore adopted to the federal plan, which is one of the plans suggested and described in the statute. But the clear and express language of the statute itself shows that this change of plan can only be made when the municipality “shall hare operated for five years under any plan provided in this act.” The city of Dayton never having operated under the act is in no wise governed or controlled by the act. The relators have clearly mistaken their course of procedure for amendment of the charter. Dayton *312 having operated under a charter framed by its own commission, of its own choosing, instead of under a plan framed by the general assembly, is, under the authority of the Lynch case, supra, and many other cases affirming the same principle, immune or exempt from the operation of the statute.
5. There is another reason why the city of Dayton was not operating under the “optional plan”’ act, and that is that the act was not a valid law at the time the city of Dayton adopted its “Commission Manager Plan.” Under the constitution the statute could not go into effect until at least ninety days had elapsed from the time of passage, in order to allow the people of Ohio the right of referendum thereon. Indeed the act itself provided that it should not go into effect until the second Monday of October, 1913.
This would seem to furnish conclusive evidence that the city of Dayton was in no wise subject to the statute in question, but had proceeded under the constitution direct, rather than under any statute.
Dayton having by its own vote, pursuant to the constitution, adopted a charter form of government, framed by its own commission, of its own choosing, rather than a form or plan of government framed by the general assembly, has become a home-rule city, under the Lynch case, supra, and the statutes of the state of Ohio touching municipal government and powers are therefore not now operative within the city of Dayton.
Where constitutions speak, statutes should be silent. This doctrine has been announced and applied in so many cases of constitutional construction *313 that it has become settled as the standard of constitutional power and legislative want of power.
Questions involving this principle have been before this court under the Constitution of 1912 in a great many cases. One of the earliest cases is that of Cincinnati Polyclinic v. Balch, 92 Ohio St., 415, where it was held that the general assembly “has no power to enlarge or limit the jurisdiction conferred by the constitution of the state, but may provide by law for the method of exercising that jurisdiction.”
The same doctrine of course must apply as to “powers.” This doctrine was followed in Wagner v. Armstrong, 93 Ohio St., 443. The same doctrine is applied in the case of Fulton v. Smith, 99 Ohio St., 230, where it was held that an express exercise of power in the constitution is an exclusive right to exercise such power upon that subject-matter.
Later on we have the case of the City of Elyria v. Vandemark, 100 Ohio St., 365, in which Section 1, Article XVIII of the Constitution, was under review, touching the right and power of the general assembly to classify cities where the constitution itself had already classified them. In the opinion in that case it is said, at page 371, 372:
“It is to be observed that the constitutional convention not only did not confer any power whatever upon the legislature to make any classification of municipalities, but it denied the legislature such authority by retaining and exercising that jurisdiction itself.”
Applied to the case at bar, the constitution having provided for the amendment of a charter government, all changes in such charter government must *314 be made agreeable to such constitutional provision, and not otherwise.
Now this court, relative to the state constitution and amendments thereto, has laid down the doctrine that the provisions relating to such amendments are mandatory, and must be substantially complied with. That doctrine is well settled in State, ex rel. Green-lund, v. Fulton, Secy, of State, 99 Ohio St., 168. The last paragraph of the syllabus is as follows:
"The provisions of Section la et seq., Article II of the Constitution, for the filing of petitions for proposed amendments to the Constitution, for copies, arguments and explanations thereof, and for preparation of ballots so as to permit an affirmative or negative vote upon each law, section of law or proposed law, or proposed amendment to the constitution, are mandatory. A submission of a proposed amendment to the constitution without substantial compliance with the provisions of the sections of the constitution referred to is invalid.”
If these constitutional provisions relating to amendments to the state constitution are mandatory, before the right to a referendum exists, then for equally good reasons the constitutional provisions relating to amendments to the municipal constitutions, the charters, are likewise equally mandatory.
These provisions are not only mandatory, but they are also exclusive, that is, they are controlling as against any statutory enactment or departure therefrom.
Now, after a municipality has adopted a charter, the state constitution itself expressly and therefore *315 exclusively provides for a change in such municipal constitution or charter, that is by amendment, in Section 9 of municipal Article XVIII, the first part of which reads:
“Amendments to any charter framed and adopted as herein provided may be submitted to the electors of a municipality by a two-thirds vote of the legislative authority thereof, and, upon petitions signed by ten per centum of the electors of the municipality setting forth any such proposed amendment, shall be submitted by such legislative authority.”
Then follow other details as to submission.
It should be frankly stated in all fairness to the relators that they do not pretend to offer any amendment to the charter, thereby to change said charter agreeable to the state constitution. Their proposal is not an amendment in name or nature, but, instead, is an abandonment. By what system of legal legerdemain it can be held that an entire and essential abandonment, so labeled on its face, is an amendment, I cannot comprehend.
The basic confusion of the relators appears in the early part of their brief, where this allegation is made:
“On August 12th, 1913, the inhabitants of Dayton adopted a charter, and under 103 Ohio Laws selected the ‘Commission’ plan and ‘Manager’ plan combined, being two of the plans prescribed by the 103 Volume of Ohio Laws.”
Here is proof positive by admission that the re-lators intended to proceed and did proceed under a *316 statute that has no application to the city of Dayton, which is under a charter government.
This cardinal confusion appears throughout the proceedings.
It will not do to say that the difference between the statute and the constitution is merely technical ; that the two are substantially the same, and therefore both may be followed.
Suffice it to say that the constitution provides that the only mode of changing a charter legally adopted is by amendment. The change provided for by the statute relied upon by the relators, under the optional plan of municipal government, is by abandonment. The abandonment change of plan can only be exercised every five years, whereas the constitutional provision for amending the charter may be exercised at any time the public will may command, so long as the change is agreeable to the constitution.
The constitutional provisions can in no sense be said to be technical. The same argument was advanced in State, ex rel. Greenlund, v. Fulton, supra, and the court there held that the constitutional provisions were each and all of a mandatory character, and must be followed as a matter of jurisdiction, before the right of referendum could be invoked.
But, again, .this petition for a referendum vote was not addressed to the city commission, and was not presented by the relators to the city commission. On the contrary, it was addressed to and presented to the board of deputy state supervisors and inspectors of elections. Nowhere in the petition does the *317 word “amendment” appear, and of course it would naturally follow that nowhere in the.petition would it appear that there was to be an amendment to a charter, leaving of course an amended charter. Upon the contrary, the petition most clearly shows an intention to abolish the charter of government, to abolish home rule in the city of Dayton in legal effect, and to make the city of Dayton again subject to the general laws of the state, substantially the same as before 1912.
How, then, can it be said that the petition for an election addressed to the deputy state supervisors and inspectors of elections, proceeding under 103 Ohio Laws, is in any sense a compliance with the constitution, when the relators from the very first step to the last have entirely disregarded the plan and method of constitutional change and amendment?
What would be said of a proposed amendment to the federal constitution, if, bearing the proper label, “amendment,” which this proposal does not do, it suggested merely that it proposed to abandon the present written constitution and adopt the “English Plan” of government, or the “Russian Plan” of government, or the “Chinese Plan” of government, instead of the American “Federal” plan? Could it logically be held that such proposal fell within the word “amendment” as contemplated in the federal constitution ?
But, again, the constitution requires “the setting forth of the amendment,” that is, the proposed change, not merely a brief reference thereto. This is entirely overlooked and ignored. Changes in *318 government must be made agreeable to the constitutions of the government, else we are inviting revolution.
It has been suggested that these constitutional provisions make amendments to the municipal charters very difficult. It must be remembered, however, that the organic, fundamental laws of the states and nations are generally made difficult in respect to amendments, especially where those changes amount to an abolition of the existing system. Amendments are not presumed to represent the will of a mere group; they are not presumed to be the expression of factional discontent or temporary disappointment in any particular administration or branch thereof. Amendments are presumed to be responsive only to a general, well-settled public opinion, demanding some remedial change in the basic plan of the government, to be effected through the proposed amendment.
Ordinances and statutes may be changed almost over night. They are necessarily very mercurial, and yield readily to the rising and falling tide of public passion. Not so with constitutions. They are presumed to represent the common sense, the calm, calculating, conscientious common sense upon the general plan of government, and upon distribution and limitation of its powers; and ever since the days of John Marshall, in his immortal opinion rendered in Marbury v. Madison, 1 Cranch, 137, it has become the settled doctrine of our American jurisprudence that the constitution is not only the primary but the paramount law in every .respect in which it voices the public will.
*319 It must be remembered that this is an action in mandamus brought against the commission of the city of Dayton, Ohio, praying for a writ commanding it to take the necessary proceedings for an election upon the proposal submitted in said petition.
Now, it is well settled that before such writ of mandamus may issue the court must find as a.matter of fact and matter of law that the relators have a clear legal right to demand of the commission the things and matters prayed for in the petition; and that the petitioners have in all respects substantially complied with the pertinent and paramount law controlling in the given case, which in this instance is the constitution.
Courts should well hesitate about denying the people the right to vote to determine whether or not a proposed change of government is or is not wanted by the majority of those voting thereon, but there is still a greater and higher duty devolving upon courts than that of allowing the utmost freedom possible under the constitution relative to a popular referendum. By the oaths of the judges it is made their special obligation to support the constitution according to the best of their understanding and ability. Finally, no greater harm can come to stable popular government than to easily and freely disregard the plain provisions of our constitutions touching any and all changes and amendments in our government, whether they be municipal, state, or federal.
No harm comes to the city of Dayton by reason of the delay occasioned by the failure to petition for an amendment agreeable to the constitution. Hav *320 ing operated five years under the present form of government, it cannot be seriously contended that a delay of a few months longer, to enable all parties to comply with the constitutional provisions for amendment, will cause any great inconvenience, loss, or injury, — certainly nothing comparable to what would be suffered by having the plain, practical provisions of the constitution ignored or disregarded.
If the foregoing propositions are sound, if the foregoing conclusions follow from such propositions, then it is clear and convincing that the rela-tors have not substantially complied with the constitutional requirements as to changing the government of a chartered city, and that they have no legal right to the writ prayed for.
Therefore, the judgment of the court of appeals is reversed, final judgment is rendered against the relators, and their petition herein dismissed.

Judgment reversed.

Johnson, Hough, Robinson and Jones, JJ., concur.